FILED

SEP 22 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 21-30149-SPM |
| ) | |
| PHILLIP JEFFERY GREENE, ) | |
| ) | Title 18, United States Code, |
| Defendant. ) | Sections 2, 287, and 1347 |
| ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### INTRODUCTION

At all times relevant to this Indictment:

1. The defendant, PHILLIP JEFFERY GREENE, was a practicing physician, licensed and residing in Illinois, employed by General Medicine, P.C. and working at various locations within the Southern District of Illinois, and enrolled as a provider in the Medicare program.

2. General Medicine, P.C., paid GREENE a salary that depended in part on the number of billable patient encounters he reported.

The Medicare Program

3. The Medicare program ("Medicare") was a "health care benefit program," as defined in Title 18 United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42 United States Code, Section 1320a-7b(f), that provided health insurance benefits to people over the age of 65 and people who suffered from certain disabilities. Medicare was administered by the U.S. Department of Health and Human Services ("HHS") through its

agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

4. Medicare was divided into several parts. Medicare Part B authorized payment for covered services rendered by enrolled providers to beneficiaries, including evaluation and management (E&M) services provided to beneficiaries in assisted living facilities, skilled nursing facilities, and nursing homes.

5. Providers seeking reimbursement from Medicare were required to certify that their reported services were actually provided and medically necessary. Under Medicare rules, health care services were medically necessary if they met accepted standards of medicine and were needed to prevent, diagnose, or treat an illness, injury, condition, disease, or its symptoms. Not all services that might be beneficial to a person's health were considered medically necessary.

6. Medicare used Current Procedural Terminology ("CPT") codes for the billing and reimbursement of claims. CPT codes were medical procedure codes produced and maintained by the American Medical Association. Each CPT code was assigned to a specific task or service. The purpose of utilizing CPT codes was to enable accurate, consistent, and uniform reporting of medical, surgical, and diagnostic services to entities such as health insurance companies and health care benefit programs.

Assisted Living Facilities, Skilled Nursing Facilities, and Nursing Homes

7. Assisted living facilities ("ALFs") were a type of long-term residential housing that provided some limited medical and personal services for residents, typically older adults or disabled persons, who were otherwise capable of living independently and caring for themselves. Medicare did not cover the costs of living in an ALF but reimbursed providers for certain services, including E&M services, provided to beneficiaries in an ALF setting.

8.   Skilled nursing facilities ("SNFs") were places, often co-located with a hospital, an ALF, or a nursing home, where people could receive short-term medical services from nurses, physical and occupational therapists, speech pathologists, and audiologists.

9.   Nursing homes (or nursing facilities) were a type of long-term residential housing that provided around-the-clock medical and personal services for residents, typically older adults or disabled persons, who were not otherwise capable of living independently or caring for themselves.

10.   Assisted Living Facility 1 and Nursing Home 1, entities whose identity were known to the Grand Jury, were located within the Southern District of Illinois.

Physician Visits in Nursing Homes

11.   Federal regulations mandated that all nursing home residents were to be seen by a physician at least once every 30 days for the first 90 days after admission, and at least once every 60 days thereafter.

12.   During each physician visit with a nursing home resident, federal regulations required the physician to: (a) review the resident's total program of care, including medications and treatments; (b) write, sign, and date a progress note; and (c) sign and date all orders (except for certain vaccines).

13.   For all physician visits and other required physician tasks in a nursing home, including the initial nursing home visit, federal regulations and Illinois state law provided that they could be satisfied when performed by a nurse practitioner, a clinical nurse specialist, or a physician assistant, so long as that person was working in collaboration with a physician and was not an employee of the facility.

3

14. Medicare did not cover the costs of ordinary nursing home care but reimbursed enrolled providers for federally-mandated nursing home visits and other medically necessary visits (for the diagnosis or treatment of an illness or injury or to improve the functioning of a malformed body member) in a nursing home. The amount of the reimbursement varied depending on the CPT code billed.

15. Medicare reimbursed only the medically necessary portion of a face-to-face visit. Therefore, when deciding which CPT code to bill, providers were required to consider only the medically necessary services they provided for the condition of the patient at the time of the visit.

The Fraudulent Scheme

16. Between approximately October 2016 and September 2018, the defendant, PHILLIP JEFFERY GREENE, together with others, agreed to execute and executed a scheme to enrich himself and others, as follows:

   a. by submitting and causing to be submitted false and fraudulent claims to Medicare, which claims misrepresented the services in fact performed; and

   b. by submitting and causing to be submitted false and fraudulent claims to Medicare for services that were not in fact rendered.

17. GREENE carried out the fraudulent scheme by purporting to treat residents of assisted living facilities, skilled nursing facilities, and nursing homes. He falsely reported that the services he provided met the requirements for reimbursement, when in fact they did not.

18. As part of the scheme, GREENE generated progress notes he knew contained misrepresentations and materially false statements about the services he purportedly provided.

19. GREENE also submitted and caused to be submitted claims to Medicare for health care services that were not rendered. For example, GREENE submitted and caused to be submitted claims for patients that were deceased or hospitalized on the date he purported to treat them.

## COUNT 1
### Health Care Fraud – 18 U.S.C. § 1347

20. Paragraphs 1 through 19 of this indictment are incorporated herein.

21. From in or around October 2016, and continuing until in or around September 2018, both dates being approximate and inclusive, in St. Clair County, Illinois, within the Southern District of Illinois and elsewhere, the defendant,

PHILLIP JEFFERY GREENE,

together with others, in connection with the delivery of health care benefits, items, and services, knowingly and willfully participated in, executed, and attempted to execute a scheme and artifice to defraud Medicare, a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain money from Medicare by means of materially false and fraudulent representations.

In violation of Title 18, United States Code, Sections 2 and 1347.

## COUNT 2
### False Claims – 18 U.S.C. § 287

22. Paragraphs 1 through 19 of this indictment are incorporated herein.

23. On or about October 24, 2016, in St. Clair County, Illinois, within the Southern District of Illinois, the defendant,

PHILLIP JEFFERY GREENE,

together with others, did knowingly and with the intent to defraud, make and present the claim set forth below upon and against HHS, a department of the United States, through CMS, knowing such claim to be false, fictitious, and fraudulent.

24. Specifically, GREENE falsely reported to his employer, General Medicine, P.C., that on October 24, 2016 at Assisted Living Facility 1 in Shiloh, Illinois, he performed services for beneficiary D.B. which caused a claim to be submitted to Medicare for reimbursement under CPT 99337.

25. At the time he reported these services to his employer, GREENE well knew his representations were false, because he had not actually examined D.B. at all on October 24, 2016. In fact, D.B. had died one day earlier, on October 23, 2016.

26. GREENE made these false representations to General Medicine, P.C., with the intent to defraud Medicare. GREENE well knew that his false report would be used by General Medicine, P.C., to support a claim for reimbursement to Medicare.

27. As a result of GREENE's false, fictitious, and fraudulent claim, General Medicine, P.C. billed Medicare $275.00 for the services GREENE supposedly performed for D.B. on October 24, 2016. Medicare denied the claim in full.

In violation of Title 18, United States Code, Sections 2 and 287.

## COUNT 3
### False Claims – 18 U.S.C. § 287

28. Paragraphs 1 through 19 of this indictment are incorporated herein.

29. On or about June 1, 2017, in St. Clair County, Illinois, within the Southern District of Illinois, the defendant,

PHILLIP JEFFERY GREENE,

together with others, did knowingly and with the intent to defraud, make and present the claim set forth below upon and against HHS, a department of the United States, through CMS, knowing such claim to be false, fictitious, and fraudulent.

30. Specifically, GREENE falsely reported to his employer, General Medicine, P.C., that on June 1, 2017 at Nursing Home 1 in Mascoutah, Illinois, he performed a comprehensive physical examination and other services for beneficiary M.W. which caused a claim to be submitted to Medicare for reimbursement under CPT 99310.

31. GREENE generated a progress note that he knew contained materially false statements and misrepresentations about the services he supposedly performed for M.W. on June 1, 2017. Specifically, GREENE indicated in his progress note the results of a physical examination he supposedly conducted of M.W. at Nursing Home 1 on June 1, 2017. His notes describe an inspection of M.W.'s head and state that M.W.'s "[f]ace without swelling, deformity, acchymosis, or erythema." However, M.W.'s face was bruised from a recent fall and had approximately a dozen stitches removed the day before.

32. GREENE made these false representations to General Medicine, P.C., with the intent to defraud Medicare. GREENE well knew that his false report would be used by General Medicine, P.C., to support a claim for reimbursement to Medicare.

33. As a result of GREENE's false, fictitious, and fraudulent claim, Medicare paid General Medicine, P.C., $109.37 by electronic funds transfer.

In violation of Title 18, United States Code, Sections 2 and 287.

### COUNT 4
**False Claims – 18 U.S.C. § 287**

34. Paragraphs 1 through 19 of this indictment are incorporated herein.

35. On or about July 20, 2017, in St. Clair County, Illinois, within the Southern District of Illinois, the defendant,

PHILLIP JEFFERY GREENE,

together with others, did knowingly and with the intent to defraud, make and present the claim set forth below upon and against HHS, a department of the United States, through CMS, knowing such claim to be false, fictitious, and fraudulent.

36. Specifically, GREENE falsely reported to his employer, General Medicine, P.C., that on July 20, 2017 at Nursing Home 1 in Mascoutah, Illinois, he performed a comprehensive physical examination and other services for beneficiary E.S. which caused a claim to be submitted to Medicare for reimbursement under CPT 99310.

37. GREENE generated a progress note that he knew contained materially false statements and misrepresentations about the services he supposedly performed for E.S. on July 20, 2017. GREENE indicated in his progress note the results of a physical examination he supposedly conducted of E.S. at Nursing Home 1 on July 20, 2017. At the time he generated the progress note, GREENE well knew these statements were false, because he had not actually examined E.S. at all on July 20, 2017. In fact, from July 19, 2017 through July 25, 2017, E.S. was not present at Nursing Home 1; E.S. was being treated for various ailments at a hospital.

38. GREENE made these false representations to General Medicine, P.C., with the intent to defraud Medicare. GREENE well knew that his false report would be used by General Medicine, P.C., to support a claim for reimbursement to Medicare.

39. As a result of GREENE's false, fictitious, and fraudulent claim, Medicare paid General Medicine, P.C., $109.37 by electronic funds transfer.

In violation of Title 18, United States Code, Sections 2 and 287.

## FORFEITURE ALLEGATION

40. The United States hereby gives notice to the defendant that, upon his conviction of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of any health care fraud offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

41. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to see forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

Pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p).



A TRUE BILL

FOREPERSON

SARAH W. ROCHA
Trial Attorney

STEVEN D. WEINHOEFT
United States Attorney

*Digitally signed by STEVEN WEINHOEFT*
*Date: 2021.09.19 23:43:56 -05'00'*

JOSEPH S. BEEMSTERBOER
United States Department of Justice
Criminal Division, Fraud Section
Acting Chief

Recommended bond: _____